# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

\* \* \*

MICHELLE CORRALES, *et al.*,

    Plaintiffs,

v.

JOSE LUIS CASTILLO,

    Defendant.

2:07-cv-00141-LRH-LRL

**MOTION FOR DEFAULT JUDGMENT (#64)**

## REPORT & RECOMMENDATION

This is a breach of contract action brought by plaintiffs Michelle Corrales, Special Administratix of the Estate of Diego Corrales, and Gary Shaw Productions, LLC ("GSP") (collectively "plaintiffs"), seeking damages from defendant Jose Luis Castillo ("Castillo") based on his failure to make weight for a professional boxing match with Diego Corrales. Pet. (#1). Plaintiffs seek an order rendering a judgment of default against nonparty Top Rank, Inc. ("Top Rank") pursuant to NRS 31.320(1). Mot. (#64). Top Rank opposes the motion.[1] Opp'n (#44).

## BACKGROUND

On June 21, 2007, the court ordered that a writ of attachment and writ of garnishment issue in this case in an amount up to and including $1,200,000 against moneys owed to Castillo, upon posting of a written undertaking or cash deposit pursuant to NRS 20.303 in an amount equal to the amount of attachment. Order (#24) at 4-5. The third persons upon whom writs of garnishment in aid of attachment could be served included Top Rank, nonparty Fernando Beltran ("Beltran"), and the Nevada State Athletic Commission ("NSAC"). *Id.* After the issuance of the writs of garnishment, plaintiffs would be able to serve the writs upon the garnishees by private process server, United States Marshal,

---

[1] Plaintiffs no longer seek an order of default against nonparty Fernando Beltran. Reply (#46) at 13 n. 7.

or as otherwise permitted by the Federal Rules of Civil Procedure. *Id.* The amount to be attached and garnished was described by the court as the proceeds from the Castillo-Hatton bout to be held on June 23, 2007 at the Thomas & Mack Center in Las Vegas, Nevada, to be paid to Castillo by his co-promoters Top Rank and Beltran. *Id.*

On June 22, 2007, the Clerk of Court entered a Writ of Attachment (#26) directing the U.S. Marshal or Constable to attach and safely keep Castillo's property to satisfy plaintiffs' demand of $500,000 exclusive of interests and costs.[2] Writ (#26). The property to be attached was described as monies due Castillo from Top Rank, Beltran and the NSAC. *Id.* Three days later, plaintiffs' counsel Eric R. Olsen, on behalf of Diego Corrales and GSP, tendered with the Clerk of Court for deposit into the Registry of the court cash in the amount of $500,000 in the nature of a bond in support of writ of attachment. Cert. (#25). The parties later agreed that the cash bond posted with the court would be reduced to $50,000, and that $450,000 of the cash bond be distributed to Corrales' counsel. Stip. (#30); *see also* Order (#31).

Pursuant to the June 21, 2007 Order (#24), on June 25, 2007 the constable attempted service on Top Rank of the Order (#24), Writ of Attachment (#26), and a writ of garnishment with attached interrogatories. Cert. (#28). Kathy Porter ("Porter"), Top Rank's front desk receptionist, signed for the documents. Exh. K to Decl. (#38). According to Top Rank, Porter is a "temp," *i.e.*, employed by a temporary employment agency, Office Team. Exh. 3 to Opp'n (#44) at ¶ 17. And at the time of service she had been the front desk receptionist for only a few months and had not been given authority to accept service on Top Rank's behalf. *Id.* at ¶ 17-18. Further, Bob Arum ("Arum") has stated that he never received the writ of garnishment, nor did he learn of its delivery. *Id.* at ¶ 15.

According to Constable Terri Siyavus ("Siyavus"), on the other hand, upon arriving at Top Rank's offices on June 25, 2007, Porter told Siyavus that she was the only one in the office at the time,

---

[2] In a sworn affidavit attached to Castillo's Opposition to plaintiffs' Motion for Attachment (#16), Bob Arum, President of Top Rank, stated that Castillo was being paid only $500,000 for the Castillo-Hatton bout. Exh. 4 to Opp'n (#20) at ¶ 25-26.

2

and that she was authorized to sign and receive the papers. Exh. B to Schalk Decl. attached to Reply (#46). Siyavus then told Porter that she should deliver the papers to a manager, comptroller or the payroll department; that the documents included a writ of garnishment; and that answers to the interrogatories were due in twenty (20) days. *Id.*

There is also evidence that Top Rank separately received notice of the writ of garnishment. Prior to the Constable's Office attempting service, plaintiffs' private process server, on June 22, 2007, served Top Rank by personally serving Arum, at Top Rank's offices, with the attachment order (#24), the Writ of Attachment (#26), and a writ of garnishment signed by plaintiffs' counsel with attached interrogatories. Cert. (#28); Am. Notice (#68). Plaintiffs' counsel also faxed Arum a letter on June 25, 2007, stating that due to the service of the writ of garnishment Top Rank should stop payment on any checks issued to Castillo. Exh. D to Schalk Decl. attached to Reply (#46). Top Rank's counsel responded that day by confirming its receipt of the letter, and carbon copying its response to Top Rank. *Id.* at Exh. E.

Top Rank never answered the interrogatories or otherwise responded to the writ of garnishment. Opp'n (#36) at 9. This Motion for Default Judgment (#64) follows.

## DISCUSSION

Plaintiffs ask the court to enter an order rendering a default judgment against Top Rank due to the latter's failure to answer interrogatories attached to the duly served writ of garnishment. Mot. (#64) at 25-26. Top Rank responds that it was not properly served with the writ of garnishment and garnishment interrogatories and that, therefore, it is not appropriate for the court to enter default judgment against it. Opp'n (#44) at 7-13.

Pursuant to Nevada's attachment statute, which governs attachment and garnishment in this case,[3] "[a] garnishee shall answer the [garnishment] interrogatories in writing upon oath or affirmation

---

[3] *See Coombs v. Heers*, 366 F.Supp. 851, 853 (D. Nev. 1973) ("Federal Rules of Civil Procedure 64 provides that local state laws governs the availability and procedure for issuing writs of attachment which, in this case, is . . . Nevada Revised Statutes, Chapter 31 . . . ."); *see also Johnson v. Fong*, 62 Nev. 249, 255 (Nev. 1944) ("Attachment proceedings are purely statutory, and recourse to the statutes must be had in ascertaining the rights granted in this state.").

3

and submit his answers to the sheriff within the time required by the writ. If the garnishee fails to do so, he shall be deemed in default." NRS 31.290(2). Such a judgment would be in favor of Castillo, but Michelle Corrales would use it to satisfy any judgment that she might obtain against Castillo:

> *If the garnishee has been duly served with the writ of garnishment and interrogatories*, and been paid or tendered the fee of $5, and the fact of the payment or tender is duly certified by the officer who served the writ over his official signature, or that fact is made to appear by the person serving the writ under oath, *but the garnishee fails, neglects or refuses to answer the interrogatories within the time required, the court shall, upon application therefor by the plaintiff* with at least 5 days' notice of the hearing upon the application given to each defendant who has appeared in the action, *enter judgment in favor of the defendant for the use of the plaintiff against the garnishee for: (a) The value of the property or amount of money specified in the writ of garnishment*[.]

NRS 31.320 (emphasis added).

In determining whether to grant or deny default judgment, the court must assess the adequacy of service of process made upon Top Rank. *See id*; *see also In re Line Hotel, Inc.*, 323 B.R. 703, 708 (B.A.P. 9th Cir. 2005) (default judgment is void where service is defective), *vacated on other grounds*, 242 Fed. Appx. 460 (9th Cir. 2007). Rule 4(h) of the Federal Rules of Civil Procedure provides that a corporation may be served either "by delivering a copy of the summons and the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process," or in the manner prescribed by the state law in which the district court is located. Fed. R. Civ. P. 4(h). Under Nevada state law, service may be made upon a Nevada corporation "to the president or other head of the corporation, secretary, cashier, managing agent, or resident agent thereof[.]" NRCP 4(d)(1). Where the evidence indicates that the person served was not authorized either by the corporation or by statute to accept service, agency to accept service of process will not be implied. *Foster v. Lewis*, 78 Nev. 330, 333 (Nev. 1962) (citations omitted).

The parties' filings in this case demonstrate that, prior to the constable's attempt to effect service, plaintiffs' private process server, on June 22, 2007, served Top Rank by personally serving Arum at Top Rank's offices with the attachment order (#24), the Writ of Attachment (#26), and a writ of garnishment with attached interrogatories. Cert. (#28); Am. Notice (#68). Plaintiffs' counsel then faxed Arum a letter on June 25, 2007, stating that, due to this service, Top Rank should stop payment

4

on any check issued to Castillo.  Exh. D to Schalk Decl. attached to Reply (#46).  Top Rank's counsel responded that day by confirming its own receipt of the letter (Arum and not counsel was its direct recipient), and copying its response to Top Rank.  *Id.* at Exh. E.

       Arum was the President of Top Rank at the time and was therefore subject to service under Rule 4(h) and NRCP 4(d)(1).  Hence, the dispute over service upon Porter is moot.  Top Rank nevertheless contends that default judgment should not be entered because plaintiffs are not prejudiced by its failure to answer the garnishment interrogatories, as plaintiffs could re-serve Top Rank in the future.  Opp'n (#44) at 11-13.  Top Rank also contends that any failure to answer should be excused due to excusable neglect.  *Id.*  While default judgment is generally disfavored, *see Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986), Nevada's attachment statute, which governs attachment and garnishment in this case, provides that the garnishee "*shall* be deemed in default" upon failing to timely answer garnishment interrogatories.  NRS 31.290(2) (emphasis added).  The court is thus left with no discretion in this regard.

## RECOMMENDATION

    Based on the foregoing, it is the recommendation of the undersigned United States Magistrate Judge that plaintiffs' Motion for Default Judgment (#64) should be granted.

    DATED this 25th day of February, 2008.

                                                                          **LAWRENCE R. LEAVITT**
                                                                          **UNITED STATES MAGISTRATE JUDGE**