1  GORDON & SILVER, LTD.
   ERIC R. OLSEN
2  Nevada Bar No. 3127
3  3960 Howard Hughes Pkwy., 9th Floor
   Las Vegas, Nevada 89169
4  (702) 796-5555

5  JUDD BURSTEIN, ESQ (NY Bar # JB-9585)
6  PETER B. SCHALK, ESQ (NY Bar # PBS-8257)
   Admitted Pro Hac Vice
7  JUDD BURSTEIN, P.C.
   1790 Broadway, Suite 1501
8  New York, NY 10019
9  (212) 974-2400
   *Attorneys for Plaintiffs*
10

11            UNITED STATES DISTRICT COURT

12                 DISTRICT OF NEVADA

13

14  MICHELLE CORRALES, Special          :
    Administratrix of the Estate of Diego   :   CASE NO.:   2:07-cv-00141-LRH-LRL
15  Corrales, and GARY SHAW             :
    PRODUCTIONS, LLC                    :
16                                      :
17              *Plaintiffs,*           :
    – against –                         :
18                                      :
    JOSE LUIS CASTILLO,                 :
19                                      :
20              *Defendant.*            :
                                        :
21  _____    :

22

23  **PLAINTIFFS' OPPOSITION TO TOP RANK,  INC.'S OBJECTIONS TO THE
    REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
24

25

26

27

28

1

### TABLE OF CONTENTS

2  TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

3  PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
4
   STATEMENT OF FACTS AND PROCEDURAL HISTORY . . . . . . . . . . . . . . . . . . . . . . . . 3
5
6        A.   Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

7        B.   Procedural History . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

8             1.   *The Attachment Orders* . . . . . . . . . . . . . . . . . . . . . . . . 4
9
10            2.   *Plaintiffs File a Motion for Default Judgment* . . . . . . . . . . . . . . . 6

11  ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

12  POINT I

13  THE MAGISTRATE CORRECTLY HELD THAT
14  TOP RANK WAS PROPERLY SERVED WITH A
    VALID WRIT OF GARNISHMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
15
16       A.   The Magistrate Correctly Found Top Rank
              Was Validly Served on June 22 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

17       B.   Top Rank Was Validly Served on June 25, 2007 . . . . . . . . . . . . . . . . . 12
18
19  POINT II

20  TOP RANK'S POSSESSION OF FUNDS SUBJECT TO
    GARNISHMENT IS IMMATERIAL TO ITS DUTY TO
21  ANSWER INTERROGATORIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

22  POINT III

23  NEVADA LAW MANDATES ENTRY OF DEFAULT
24  FOR FAILURE TO ANSWER INTERROGATORIES . . . . . . . . . . . . . . . . . . . . . . . . 16

25  POINT IV

26  SETTING ASIDE DEFAULT JUDGMENT IS UNWARRANTED . . . . . . . . . . . . . . . . . 18

27  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
28

1

**TABLE OF AUTHORITIES**

2

CASES

3

*Bovarie v. Tilton,*
4    No. 06CV687, 2008 WL 761853,(S.D.Cal. Mar. 19, 2008) . . . . . . . . . . . . . . . . . . 12, 13

5

*Butler v. State,*
6    120 Nev. 879, 102 P.3d 71 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

7    *Direct Mail Specialists, Inc. v. Eclat Computerized Technologies, Inc.,*
8    840 F.2d 685 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

9    *Flynn v. Pulaski Const. Co., Inc.,*
     No. 02-02336, 2006 WL 47304 (D.D.C. Jan. 6, 2006) . . . . . . . . . . . . . . . . . . . . . . 13
10

11   *Jacobs v. Sheriff, Washoe County,*
     108 Nev. 726, 837 P.2d 436 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

12

*Miller v. French,*
13   530 U.S. 327 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

14

*S.E.C. v. Small Cap Research Group, Inc.,*
15   226 Fed.Appx. 656, 2007 WL 579809 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . 19

16

*State v. American Bankers Ins. Co.,*
17   106 Nev. 880, 802 P.2d 1276 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

18   *United States v. Scharringhausen,*
     224 Fed. Appx. 611, 2007 WL 684126 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . 19
19

20   *Valentino Motors Corp. v. Grillo,*
     23 Cambria C.R. 58, 22 Pa. D. & C.2d 252,
21       1960 WL 6361 (Pa.Com.Pl. 1960) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

22   STATUTES

23   Fed.R.Civ.P 4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 14

24

25   Fed.R.Civ.P. 55 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

26   Fed.R.Civ.P. 60 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

27

28                                              ii

Fed.R.Civ.P. 64 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

N.R.C.P. 4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

N.R.S. 31.260 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

N.R.S. 31.270 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

N.R.S. 31.290 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15,16

N.R.S. 31.320 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 17, 18

N.R.S. 31.330 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Nevada Local Rule IB 3-2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

iii

1  GORDON & SILVER, LTD.
2  Eric R. Olsen
   Nevada Bar No. 3127
3  3960 Howard Hughes Pkwy., 9th Floor
   Las Vegas, Nevada 89169
4  (702) 796-5555

5
   JUDD BURSTEIN, P.C.
6  Judd Burstein (admitted *pro hac vice*)
   Peter B. Schalk (admitted *pro hac vice*)
7  1790 Broadway, Suite 1501
   New York, New York 10019
8  (212) 974-2400

9
   *Attorneys for Plaintiffs Michelle Corrales*
10 *and Gary Shaw Productions, LLC*

11                 UNITED STATES DISTRICT COURT

12                      DISTRICT OF NEVADA

13 _____
14 MICHELLE CORRALES, Special              :
   Administratrix of the Estate of Diego Corrales :
15  and GARY SHAW PRODUCTIONS, LLC         :
                                           :    Case No.: 2:07-cv-00141-LRH-LRL
16                 *Plaintiffs,*            :
                                           :
17       - against -                       :    **PLAINTIFFS' OPPOSITION TO**
                                           :    **TOP RANK, INC.'S OBJECTIONS**
18 JOSE LUIS CASTILLO,                     :    **TO THE  REPORT AND**
                                           :    **RECOMMENDATION OF**
19                                         :    **UNITED STATES MAGISTRATE**
                 *Defendant.*              :    **JUDGE**
20                                         :    _____
21                                         :
22 _____

23       Plaintiff Michelle Corrales, as the Special Administratrix of the Estate of Diego Corrales, Jr.,[1]

24 and Plaintiff Gary Shaw Productions, LLC (collectively "Plaintiffs"), respectfully submit this

25 Memorandum of Points and Authorities, pursuant to Local Rule IB 3-2, in opposition to Top Rank

26 _____

27       [1]      Corrales was killed in a motor vehicle accident on May 7, 2007.

28

Inc's ("Top Rank") Objections to the Report & Recommendation of United States Magistrate Judge Lawrence R. Leavitt, together with such other and further relief as this Court deems just and proper.

## PRELIMINARY STATEMENT

Despite Plaintiffs' proper service of a Writ of Attachment, Writ of Garnishment with Interrogatories, and an Order from this Court on two occasions, Top Rank simply disregarded service and failed to answer the Interrogatories supplied to it, or otherwise respond to the Writ of Garnishment. In response to Top Rank's flouting of this Court's Order and validly served process, United States Magistrate Judge Lawrence R. Leavitt recommended that Plaintiffs' motion for a default judgment be granted.

Contrary to Top Rank's view, it was properly served with the Writ of Garnishment and accompanying papers on June 22, 2007, *via* personal service upon Top Rank's Chairman, Robert Arum ("Arum"). This service is supported by an affidavit of service and corresponding filings that demonstrate what was served upon Top Rank and when service was made. In addition to this service, which Top Rank challenges on technical grounds, Plaintiffs again served the Writ of Garnishment upon Top Rank three days later. There can be no questioning the validity of this second service, or Top Rank's default with respect thereto. Indeed, consistent with these incidents of service, Top Rank's counsel confirmed receipt of correspondence by Plaintiffs' counsel requesting compliance with the Writ of Garnishment. Nonetheless, despite being put on notice of the Writ on numerous occasions – and its counsel's written acknowledgment of same – Top Rank took no action to respond to the Writ of Garnishment or the Interrogatories, and therefore should be held in default.

Top Rank now objects to Magistrate Judge Leavitt's conclusion that a default judgment should be entered against it. *See* Top Rank's Objections to Report and Recommendation of

Magistrate Judge Leavitt, filed as Docket Number 73 in this action ("Top Rank Obj."). In support, Top Rank argues that it supposedly was not served, because: (i) Arum is **unable to recall** being personally served, and (ii) an electronic filing error should be equated to Top Rank not being served. (Top Rank Obj., pg. 7). Top Rank also baldly asserts that the default judgment recommended by Magistrate Judge Leavitt should be set aside, without offering any showing of good cause whatsoever. (Top Rank Obj., pgs. 14-15).

Top Rank's arguments are unavailing, and Plaintiffs respectfully request that this Court adopt the Report and Recommendation of Magistrate Judge Lawrence R. Leavitt that Plaintiffs' motion for default judgment be granted.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

**A.    Introduction**

While the facts underlying this action are not of primary relevance on this application, they do provide a background for the present dispute.[2] Plaintiffs' claims arise out of the repeated failure of Defendant Jose Luis Castillo ("Castillo") to comply with his contractual obligations to Diego Corrales ("Corrales") to engage in championship fights at the weight of 135 lbs. Castillo's inability to "make weight" deprived Corrales of substantial monies that he otherwise would have received for fighting Castillo.

Plaintiffs contend that Fernado Beltran ("Beltran"), Castillo's manager and co-promoter, together with Top Rank, helped Castillo avoid paying taxes while thwarting creditors in the United

---

[2]    All of the facts and evidence necessary for a resolution of this motion are set forth in: (a) the accompanying Declaration of Peter B. Schalk, dated March 31, 2008, ("Schalk Dec.") with the Exhibits annexed thereto, and (b) the Declaration of Eric R. Olsen, dated March 31, 2008 ("Olsen Dec."), with the Exhibit annexed thereto.

3

States.  More particularly, Plaintiffs contend that Top Rank and Beltran funnel money from Top Rank to Beltran, who then pays monies to Castillo in Mexico.

Plaintiffs have been granted multiple Orders of attachment in their attempt to secure monies that have been improperly diverted to Castillo in Mexico.  (Ex. A and Ex. C).[3]  Plaintiffs respectfully submit that Castillo, Beltran, and Top Rank are using this same scheme to avoid the restraints of the attachments and garnishments issued in this action.  This contrivance has ultimately led Top Rank to deny ever being served with a Writ of Garnishment and Interrogatories, and in turn its failure to answer the Interrogatories or otherwise respond to the Writ.

**B.    Procedural History**

1.    *The Attachment Orders*

Plaintiffs have twice obtained Orders of Attachment in this action.  **First**, on January 17, 2007, the Nevada District Court, County of Clark, granted a Writ of Attachment against Castillo up to $400,000, from the proceeds of a boxing match between Castillo and Herman Ngoudjo, which took place on January 20, 2007 in Las Vegas, Nevada.  (Ex. A).

**Second**, and directly relevant here, on June 7, 2007, Michelle Corrales, Corrales' widow and administratrix of the Estate of Diego Corrales, filed a motion seeking *inter alia* (i) a prejudgment Writ of Attachment against Castillo of any monies up to $1,200,000 due and owing to Castillo from the proceeds of the Castillo-Hatton Bout to be paid to Castillo by his co-promoters Top Rank and Beltran; and (ii) a Writ of Garnishment issued against, *inter alia*, Top Rank.  (Ex. B).

---

[3]        Except where specifically stated herein, in particular with respect to Ex. 1 to the Olsen Dec., all Exhibits referenced herein are annexed to the Schalk Dec.

4

1    In an Order dated June 21, 2007 (the "June 21 Order"), this Court granted the second

2    attachment motion. The June 21 Order identified, *inter alia*, Top Rank as an entity upon which

3    the Writ of Garnishment could be served. (Ex. C). Moreover, the June 21 Order identified and

4    described the proper subject of attachment and garnishment as "the proceeds from the Castillo-

5    Hatton Bout, to be held on June 23, 2007,...to be paid to Castillo by his co-promoters Top Rank,

6    Inc. and Fernando Beltran." *Id.*

7    On Friday, June 22, 2007, the day immediately after this Court issued the June 21 Order,

8    Plaintiffs' private process server served Arum personally at Top Rank's offices (Ex. D).

9    Specifically, Arum was served with the Writ of Attachment signed by the U.S. District Court

10    Clerk, the Writ of Garnishment with accompanying Interrogatories, and the June 21 Order,

11    which granted the attachment. This is evidenced by the Affidavit of Service filed by Plaintiffs,

12    which indicated that on June 22, 2007, Gerald A. Fitzsimmons personally served Arum with

13    these documents at 3980 Howard Hughes #580, in Las Vegas, Nevada (Ex. D)

14    Plaintiffs effectuated service on the day immediately following the entry of the Order

15    (June 22nd) in light of the fact that they were seeking to attach the proceeds that would be

16    generated from the Castillo-Hatton Bout to be held the very next day, on June 23rd. (Olsen Dec.

17    at ¶4,n.1). Due to the shortage of time, with the Order of Attachment issuing on Thursday, June

18    21, and the fight scheduled for Saturday, June 23rd, Plaintiffs were unable to obtain a Writ of

19    Garnishment signed by the Marshall's Office, or Constable's Office and so the Writ served on

20    June 22nd was signed by counsel for Plaintiffs. *Id.*

21    Thereafter, as a precaution, on June 25, 2007, Plaintiffs followed up on this service when

22    Deputy Constable Terri Siyavus ("Constable Siyavus") served a "Notice of Execution and Writ

23    of Garnishment/Attachment" signed by the Constable upon Top Rank, by personal delivery upon

24    Top Rank's receptionist, Kathy Porter. (Ex. E).

25    ...

26    ...

27    ...

28    ...

GORDON & SILVER, LTD.
ATTORNEYS AT LAW
NINTH FLOOR
3960 HOWARD HUGHES PKWY
LAS VEGAS, NEVADA 89169
(702) 796-5555

101140-001/557818.doc

5

Constable Siyavus averred that Kathy Porter was the only employee available to be served, and further that "Kathy Porter stated she was able to sign for the above-mentioned documents. I explained that the documents should be delivered to a manager, comptroller or the payroll department; that the documents were a writ of garnishment and that answers to the interrogatories were due in 20 days." *Id.*

Additionally, on June 25, 2007, Eric R. Olsen, Esq., co-counsel for Plaintiffs, sent a letter to Top Rank, addressed to Bob Arum. This letter demanded that payment be stopped on a check paid to Castillo in the amount of $41,000.00, from Top Rank's account. (Ex. F). Top Rank confirmed its receipt of this letter with a response on June 26, 2007, from Eric D. Hone, Esq., counsel to Top Rank. (Ex. G). Hence, in light of the acknowledgment from Top Rank's own counsel, the only conclusion to draw is that Top Rank's default was knowing, intelligent, and willful.

2.      *Plaintiffs File a Motion for Default Judgment*

On September 7, 2007, Plaintiffs filed a Cross-Motion for various relief, including a default judgment pursuant to Fed.R.Civ.P. 64 and N.R.S. 31.320 against garnishee Top Rank. Top Rank filed its response to Plaintiffs' Cross-Motion on September 26, 2007. (Ex. H). Plaintiffs filed their reply in further support of their Cross-Motion for Various Relief on October 10, 2007.

Magistrate Judge Leavitt issued a Minute Order on February 11, 2008 (Ex. I) ("February Minute Order"), requesting Plaintiffs file all documents served upon Top Rank in conjunction with the Affidavit of Service for the June 22nd service.

On February 13, 2008, Plaintiffs filed a Notice of Filing Documents in response to the Court's February Minute Order. (Exhibit J). Attached to Plaintiffs' Notice as Exhibit 2 was the Writ of Garnishment executed by Plaintiffs' counsel on June 22, 2007. Exhibit 2 to the Writ of

6

1   Garnishment was mistakenly filed without page 3, which consisted of the page of Interrogatories

2   served on Top Rank on June 22, 2007. (Olsen Dec. at ¶ 4). To correct this omission, Plaintiffs filed

3   an Amended Notice of Filing Documents to the Court's February Minute Order. (Exhibit K).

4   However, in a clerical error, this Amended Notice attached as Exhibit 2 the Writ of Garnishment that

5   had been served upon the Nevada State Athletic Commission ("NSAC"), rather than the Writ of

6   Garnishment served upon Top Rank. (Olsen Dec. at ¶ 5). While this filing error was regrettable,

7   it does not change the fact that Top Rank was in fact served with the proper Writ of Garnishment,

8   and **not** the NSAC Writ. (Olsen Dec. at ¶ 7).

9   

10   The Olsen Dec. submitted herewith exhibits the complete set of documents that were served

11   upon Top Rank on June 22, 2007 by personal delivery to Arum. (Olsen Dec. at ¶ 7 and Exhibit 1

12   thereto). This additional evidence is properly considered by the Court in connection with Top

13   Rank's application. *See* Nevada Local Rule IB 3-2: "The district judge may also receive further

14   evidence...."

15   On February 25, 2008, Magistrate Judge Lawrence R. Leavitt issued the Report and

16   Recommendation that the Court grant Plaintiffs' Motion for Default Judgment against Top Rank,

17   Inc., based upon Top Rank's abject failure to answer Interrogatories or otherwise respond to the Writ

18   of Garnishment. (Ex. L).

19   In response to Magistrate Judge Leavitt's Report and Recommendation, on March 12, 2008,

20   Top Rank filed an Objection, requesting that this Court refrain from entering default judgment

21   against it, or to set aside the default judgment. *See* Top Rank Obj., pg. 15. Plaintiffs oppose Top

22   Rank's Objection, and respectfully request that this Court adopt the Report and Recommendation

23   of Magistrate Judge Leavitt that Plaintiffs' motion for default judgment be granted.

7

**ARGUMENT**

**POINT I**

**THE MAGISTRATE CORRECTLY HELD THAT TOP RANK
WAS PROPERLY SERVED WITH A VALID WRIT OF GARNISHMENT**

**A.** **The Magistrate Correctly Found Top Rank Was Validly Served on June 22**

    1.    *After-the-Fact Clerical Errors Do Not Vitiate Service*

    As set forth in Magistrate Judge Leavitt's Report and Recommendation, Top Rank was properly served on June 22, 2007, with notice of the Writ of Garnishment. Furthermore, Magistrate Judge Leavitt also correctly held that the service of process made upon Top Rank supported entry of a default judgment. Top Rank contends that the Court erred in deciding that the documents filed by Plaintiffs support the finding that Top Rank and/or Arum were properly served with the Writ of Garnishment, or, at a minimum, with validly issued copies of the Writ. (Top Rank Obj., pg. 6).

    As discussed above, however, on June 22[4], Arum was personally served with the requisite papers on behalf of Top Rank[4] at Top Rank's offices. (Ex. D). On this date, Top Rank, through Arum, was also served with the Writ of Attachment, as issued by the United States District Court Clerk, and a Writ of Garnishment signed by Plaintiffs' counsel, with accompanying Interrogatories. This service is evidenced by the Affidavit of Service filed by Plaintiffs, stating that on June 22, 2007,

---

    [4]    Top Rank does not dispute that Arum is authorized to accept service on behalf of Top Rank. Nor could it do so credibly. As set forth in the March 12, 2008 Declaration of Arum ("March 2008 Arum Dec."), which is annexed as Ex. B to Top Rank's Obj., he is the Chairman of the Board of Top Rank. *See* ¶ 2 of the March 2008 Arum Dec. Accordingly, service upon Top Rank through Arum is valid under both federal law as well as that of Nevada. In this regard, Fed.R.Civ.P 4(h) permits a corporation to be served "by delivering a copy of the summons and the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process," or pursuant to state law where the district court is located. Under Nevada law, a corporation may be served by serving being made "to the president or other head of the corporation, secretary, cashier, managing agent, or resident agent thereof." N.R.C.P. 4(d)(1).

Gerald A. Fitzsimmons personally served Arum with the above documents at 3980 Howard Hughes #580, in Las Vegas, Nevada. (Ex. D). The June 21 Order identified, *inter alia*, Top Rank as an entity upon which the Writ of Garnishment may be served. *Id.* Thus, upon being served on June 22, 2007, Top Rank had full knowledge and was effectively served with the Writ of Garnishment.

Top Rank offers no competent evidence to contradict Plaintiffs' proof that Arum was in fact served on this date. Rather, the only supposed support offered is Arum's statement that "I **do not recall being** served with a writ of attachment or a writ of garnishment at Top Rank's office on June, 22, 2007." *See* March 2008 Arum Dec., at ¶ 10. (Emphasis supplied). Arum also avers "I **do not recall** returning to the Top Rank offices after the weigh-in on June 22, 2007." *Id.* at ¶ 9 (Emphasis supplied). Surely, Arum's failure of recollection is insufficient to refute Plaintiffs' contemporaneous proof of service.

Top Rank further argues that a mistake in filing pursuant to the Court's February Minute Order equates to Plaintiffs' failure to provide "any proof that Arum was served with a complete and validly issued writ of garnishment." (Top Rank Obj, pg. 8). While it is true that Plaintiffs' Notice of Filing Documents erroneously omitted page 3 of the Writ of Garnishment served upon Top Rank on June 22, 2007, which contained the Interrogatories, that oversight does not establish that Arum was not served with the Interrogatories. (Ex. J). Rather, the page was omitted as a clerical error. (Olsen Dec. at ¶ 4). When this mistake was realized, Plaintiffs filed an Amended Notice of Filing Documents. However, the second filing contained as Exhibit 2 the Writ of Garnishment filed upon the Nevada State Athletic Commission, rather than the Writ of Garnishment served upon Top Rank. (Ex. K). While these filing errors are regrettable, they do not change the underlying fact that on June 22, 2007, Top Rank was served with the June 21 Order, granting the attachment, the Writ of

Attachment, as issued by the U.S. District Court Clerk, and a Writ of Garnishment,[5] with accompanying Interrogatories.

The accompanying Olsen Dec. annexes the complete set of documents served upon Top Rank on June 22, 2007, which includes the interrogatory page previously omitted from the filing on February 13, 2008. *See* Exhibit 1 to the Olsen Dec., a true and accurate copy of the Writ of Garnishment, Writ of Attachment, and February 21 Order served on Top Rank on June 22nd. As noted above, moreover, this proof is properly considered by this Court pursuant to Nevada Local Rule IB 3-2. These documents, together with the affidavit of service filed by Plaintiffs describing these documents, establish that on June 22, 2007, Top Rank, *via* Arum, was indeed served with the Writ of Attachment, Writ of Garnishment, **including the Interrogatories**, and the June 21 Order. (Moreover, as discussed *infra*, even if this Court were to completely disregard the June 22nd service, it should still find Top Rank in default, based upon the June 25th service alone).

Top Rank's argument that it was never properly served on June 22, 2007, with the Writ of Garnishment and Interrogatories due to a filing error is disingenuous at best. Top Rank ignores that Plaintiffs filed a valid, contemporaneous affidavit of service, describing in entirety all of the documents served upon Top Rank on June 22, 2007. (Ex. D). Moreover, the complete set of documents served upon Top Rank on June 22, 2007, is now before the Court to resolve any confusion. (*See* Ex. 1 to the Olsen Dec.).

In view of the foregoing, Magistrate Judge Leavitt properly recommended that a default judgment be issued against Top Rank.

---

[5]    As noted, the Writ of Garnishment served on June 22 was signed by Plaintiffs' counsel, while the Writ served on June 25th was executed by the Marshall's office.

2.   *A Late Payment of the $5 Fee and Counsel's Signing of the Initial Writ of Garnishment Do Not Invalidate Service*

Top Rank also argues that Plaintiffs did not present a check with the documents served on Arum on June 22, 2007. (Top Rank Obj., pg. 9). The fee was paid with the second service on June 25, 2007. (Olsen Dec. at ¶ 8). As per Top Rank, a delay in paying the $5 fee required by N.R.S. 31.270 provides a basis to find service incomplete. Top Rank, however, fails to cite to any authority to support its position that service is ineffective merely for the failure to pay the $5 fee **at the time of service**. To the contrary, that Top Rank did not receive the $5 sum until June 25, 2007, does not, in itself, provide grounds for Top Rank to disclaim notice of the Writ of Garnishment, or its obligation to answer the Interrogatories. Indeed, courts have held that technical irregularities do not render a Writ of Garnishment void if the garnishee was not injured and received actual notice. *See Valentino Motors Corp. v. Grillo*, 23 Cambria C.R. 58, 22 Pa. D. & C.2d 252, 1960 WL 6361 (Pa.Com.Pl. 1960) ("The failure to supply the garnishee with 'an additional copy of the writ for each defendant' did not render the service void in the absence of any averment that any defendant was actually injured or lacked ample notice by the sheriff's failure to furnish such copies.").

Notably, as made clear in the Olsen Dec., Top Rank did receive the $5 sum called for by the statute. (Olsen Dec. at ¶ 8). Top Rank's objection to service on the grounds that a $5 fee (supposedly) was not paid should be rejected. A 3 day delay in receiving a $5 fee does not constitute grounds to vitiate service.

Top Rank also complains that the Writ of Garnishment served on June 22nd was signed by Plaintiffs' counsel. (As noted *supra*, the Writ of Garnishment served on June 25th, by way of

11

contrast, was executed by the Marshall's Office).   Based upon the same principles set forth in

*Valentino* above, this irregularity does not vitiate service.

        3.    *Letters Between Counsel Put Top Rank on Further Notice*

      As set forth in the Procedural section, *supra*, Plaintiffs were under significant time

constraints to serve the Writ of Garnishment and Writ of Attachment with Interrogatories.

Accordingly, counsel for Plaintiffs did everything they could to put Top Rank, *et. al*, on notice of

same while also properly effecting service. Thus, Plaintiffs' counsel faxed Top Rank a letter on June

25, 2007, stating that due to the service of the Writ of Garnishment, Top Rank should stop payment

on any check issued to Castillo. Top Rank's counsel responded that day confirming that Top Rank

received that letter, and had actual notice of the Writ. (Exs. F and G).

      Top Rank, however, erroneously suggests that Plaintiffs, as well as the Magistrate, relied

upon correspondence between counsel to evidence service. (Top Rank Obj., pg. 10). To be clear,

Plaintiffs never argued in their cross-motion that a default should be granted against Top Rank **solely**

based upon exchange of letters. Nor did Magistrate Judge Leavitt so find. However, these letters

do provide further evidence that Top Rank had actual notice of the Writ of Garnishment and

accompanying papers.

**B.**    <u>**Top Rank Was Validly Served on June 25, 2007**</u>

      In addition to the foregoing, this Court can of course confirm the Report and

Recommendation on alternative grounds. *See, e.g., Bovarie v. Tilton*, No. 06CV687, 2008 WL

761853, at *7 (S.D.Cal. Mar. 19, 2008):

        The R & R states that "Darr is the only served defendant who has not responded to
        the SAC." [R & R at 13.] Magistrate Judge Stormes recommended, nonetheless, that
        the request for default judgment against Defendant Darr be denied. *Id.* Defendants

1
2
3
4
5

> contend that Darr was included in the Motion to Dismiss, and thus responded timely
> to Plaintiff's SAC. [Def. Obj. at 5.] **While the Court notes that Defendant has a**
> **valid objection, the Court simply adopts the R & R's recommendation on the**
> **alternative grounds that Darr responded timely.** Furthermore, because this Court
> finds that Defendant Darr responded timely, there is no basis for Plaintiff's objection
> to Magistrate Judge Stormes's refusal to enter default judgment, and, therefore, the
> Court rejects Plaintiff's objection.

6   (Emphasis supplied).

7       As an alternative basis to confirm the Report and Recommendation of Magistrate Judge

8
9   Leavitt that a default be entered, Top Rank was also properly served with a Writ of Garnishment and

10  Interrogatories on June 25, 2007. More particularly, on June 25, 2007, Top Rank was properly

11  served with a Writ of Garnishment concerning the Castillo-Hatton Bout by Constable Siyavus by

12  means of personal delivery of those papers to Top Rank's receptionist, Kathy Porter ("Porter"). (Ex.

13  E). Plaintiffs previously argued that service was sufficient on this ground in their original motion

14  for default judgment (Ex. B), as well as in their reply to Top Rank's opposition.

15
16      This Circuit has upheld service based upon actual notice and service upon an individual like

17  Porter. *See Direct Mail Specialists, Inc. v. Eclat Computerized Technologies, Inc.*, 840 F.2d 685 (9th

18  Cir. 1988). In *Direct Mail*, process was served upon the secretary at "the building that served as the

19  office for both [defendant] Eclat and [non-party] CT." *Id.* at 687. The receptionist advised the

20  process server that she was the only one at the office at that time, and the process server left the

21  summons and complaint with her. *Id.* The defendant Eclat received actual notice, because its

22
23  president complained to plaintiff about having been served with process. *Id.*

24      Notably, the Court presumed that the receptionist worked for CT, not Eclat. *Id.* at 687

25  ("appellant claims that she was not even an employee of Eclat (presumably she was an employee of

26
27  CT)"). Even under those circumstances, the Court held that service upon Eclat was proper:

28                                              13

> Professor Moore notes that a recipient of process need not even be an employee of
> a company to be its managing agent, as long as the person demonstrates apparent
> authority. *** It is also true that actual receipt of process by the correct person may
> be a factor in finding process valid when there are other factors that make process
> fair. *** [W]e find service of process on the receptionist in the shared office of Eclat
> and CT is sufficient to create personal jurisdiction over Eclat under Rule 4(d)(3)
> [now 4(h)(1)].

*Id.* at 688-689 and 688, n. 1 (citations omitted).

*Flynn v. Pulaski Const. Co., Inc.*, No. 02-02336, 2006 WL 47304 (D.D.C. Jan. 6, 2006), is

also on point.  In *Flynn*, plaintiff's process server served three separate defendant corporations by

serving the "secretary/receptionist for the office" of those corporations.  *Id.* at *2.  Because this

individual was a secretary/receptionist for three distinct corporations, it was extremely unlikely that

she was a salaried employee of each.   Nonetheless, the Court held that service upon the

secretary/receptionist was proper, because she was an agent of all three corporations, she stated that

she was authorized to accept service, and defendants received actual notice:

> The Court must first decide whether Pericoloso was a person authorized to accept
> service of process for Defendant corporations under Fed.R.Civ.P. 4(h)(1). ***
> [S]ervice is sufficient when (a) an agent of the corporation who (b) represents to the
> process server that she is authorized to receive service is served, and (c) provided that
> the defendants received actual notice. It is uncontroverted that (a) Pericoloso was an
> agent of the Defendants', (b) that she held herself out to be authorized to accept
> service, and (c) that the Defendants' received actual notice.

*Id.* at *4 (citations omitted).

Here, Porter undoubtedly was the receptionist for the office and Top Rank, regardless of who

signs her paycheck.  According to the sworn proof of service from Constable Terri Siyavus (Ex. E),

Constable Siyavus arrived at Top Rank's offices on June 25, 2007 and was greeted by Top Rank's

receptionist, Porter, who told her that she (Porter) was the only one in the offices at the time, and that

she was authorized to sign and receive the papers.  Constable Siyavus then told Porter that she

(Porter) should deliver the papers to a manger, controller, or the payroll department, that the documents were a Writ of Garnishment, and that answers to the Interrogatories were due in 20 days. *Id*. Furthermore, Top Rank also had additional actual notice of service based upon both Mr. Olsen's June 25, 2007 letter (Ex. F), **and** the prior June 22nd service upon Arum.

To dispute the June 25th service upon Porter, Arum merely states that as part of Top Rank's "normal course of business," Porter would not have been the only employee at its offices at the time Constable Siyavus served the Writ. (Ex. M). However, Top Rank fails to submit a declaration from anyone who was actually present at that time, let alone Porter. Top Rank cannot rely upon Arum's vague claim on this issue to supercede the proof of service provided by Constable Siyavus, who, unlike Arum, is a disinterested witness. Indeed, even if Arum's claim were credited, there is no proof that events did not unfold on June 25, 2007 in a manner that was outside of the "normal course of business" for Top Rank. In other words, Arum's carefully chosen words do not say anything about what actually happened with respect to service on June 25.

Service on June 25, 2007, would have still afforded Top Rank the ability to cancel any checks issued to or on behalf of Castillo AND respond to the Interrogatories. Yet, Top Rank failed to do either. Accordingly, entry of a default is proper based upon the follow-up June 25th service standing alone.

## POINT II

### TOP RANK'S POSSESSION OF FUNDS SUBJECT TO GARNISHMENT IS IMMATERIAL TO ITS DUTY TO ANSWER INTERROGATORIES

Top Rank contends that a Writ of Garnishment issued on June 25, 2007, would have been moot due to the fact that it lacked the funds subject to the Writ on that date. (Top Rank Obj., pg.

15

12).  Of course, Plaintiffs specifically asked Top Rank to put a stop on its check to Castillo, which Top Rank refused to do.  But even if the funds had left Top Rank's account, Top Rank overlooks that the default was entered against it for its failure to answer the Interrogatories, not for the release of the actual funds that were subject to the Writ of Garnishment.  Hence, assuming, *arguendo*, that service was not effective on June 22, 2007, but instead effective on June 25, 2007, and after Top Rank had allegedly released the funds in its possession subject to garnishment, Top Rank was not relieved of its duty to answer the Interrogatories simply because it no longer possessed the funds.

The sample interrogatories found in N.R.S. 31.290 are intended to serve as a discovery mechanism.  For example, Interrogatory No. 4 reads:  "Do you know of any debts owing to the defendants, whether due or not due, or any money, property, effects, goods, chattels, rights, credits or choses in action, belonging to .......... or in which .......... is interested, and now in the possession or under the control of others?"  This text clearly contemplates that an individual serving interrogatories upon a garnishee should be provided with information about funds which may have been in the garnishee's control that now have been paid over to the debtor.

Thus, Top Rank's alleged release of the funds prior to the June 25, 2007 service has nothing to do with its independent failure to answer the Interrogatories or otherwise respond to the Writ. Therefore, a default judgment is properly entered against Top Rank for its failure to respond to the Interrogatories.

16

# POINT III

## NEVADA LAW MANDATES ENTRY OF DEFAULT FOR FAILURE TO ANSWER INTERROGATORIES

Nevada law plainly states that a garnishee who fails to answer Interrogatories should have a default judgment entered against him. The Report and Recommendation correctly found that based upon Top Rank's failure to answer the Interrogatories, entry of a default judgment against Top Rank was mandatory. Still, Top Rank contends that Magistrate Judge Leavitt had discretion in the decision of whether to find it in default, and presumably abused that discretion. (Top Rank Obj., pg. 13).

Contrary to Top Ranks' position, entry of a default judgment under the circumstances presented here is not discretionary under Nevada law. Rather, N.R.S. 31.290(2) specifically provides that a garnishee who fails to "answer the interrogatories in writing under oath or affirmation ... within the time required by the writ. ... **shall** be deemed in default." (Emphasis supplied). The Statute's use of "shall" means that a garnishee who fails to answer the interrogatories will be deemed in default. "In construing statutes, 'shall' is presumptively mandatory and 'may' is construed as permissive unless legislative intent demands another construction." *State v. American Bankers Ins. Co.*, 106 Nev. 880, 882, 802 P.2d 1276, 1278 (1990) (Citations omitted). *See also Miller v. French*, 530 U.S. 327, 337-338 (2000):

> Such an interpretation, however, would subvert the plain meaning of the statute, making its mandatory language merely permissive. Section 3626(e)(2) states that a motion to terminate prospective relief *"shall operate* as a stay *during"* the specified time period ... To allow courts to exercise their equitable discretion to prevent the stay from "operating" during this statutorily prescribed period would be to contradict § 3626(e)(2)'s plain terms. It would mean that the motion to terminate merely *may* operate as a stay, despite the statute's command that it "shall" have such effect.

17

1  (Italics in original).[6]

2      Top Rank offers no contrary authority to support its argument that entry of a default against

3  a party who fails to answer Interrogatories is discretionary.

4

5      Of course, even if Magistrate Judge Leavitt's recommendation that a default be entered were

6  discretionary, there is no basis to conclude that doing so constituted an abuse of discretion. The

7  actual evidence shows that Top Rank was validly served, and there can be no dispute that Top Rank

8  was on express notice of this Court's Order of attachment and related process. Top Rank

9  nonetheless chose to thumb its nose at this Court's decree, and now relies upon technicalities to

10 avoid the consequences of its actions.

11

12     In arguing that entry of a default is discretionary, Top Rank purports to rely upon N.R.S.

13 31.320. (Top Rank Obj., pg. 14). Any such reliance is misplaced. N.R.S. 31.320 allows a garnishee

14 defendant to seek relief from a final judgment upon a motion, which obviously can only happen after

15 judgment has already been entered. The Court's discretion to provide relief from judgment upon due

16 showing is an entirely separate issue from the mandatory entry of default for the neglect to answer

17 Interrogatories.

18

19     Top Rank's attempt to establish a difference between "default" and "default judgment" also

20 has no bearing upon the issues at hand. (Top Rank Obj., pg. 13). Notably, Top Rank fails to provide

21 any explanation – let alone a coherent one – as to what the word "default" was intended to mean in

22 the Statute. Moreover, rather than find that a default and default judgment are unrelated procedures,

23

24 ───────────────────

25     [6]    By way of contrast, *Butler v. State*, 120 Nev. 879, 893, 102 P.3d 71, 81 (2004), held:
26 "Our attention is specifically drawn to the word 'may' as it appears twice in N.R.S. 175.151, once
   in each of the statute's two sentences. 'May,' as it is used in legislative enactments, is often
27 construed as a permissive grant of authority, and it is used permissively in this statute as well."

28                                          18

1    *Jacobs v. Sheriff, Washoe County*, 108 Nev. 726, 729, 837 P.2d 436, 438 (1992), simply held that

2    the finding of a valid default is a prerequisite to the entry of a default judgment.

### POINT IV

### SETTING ASIDE DEFAULT JUDGMENT IS UNWARRANTED

6         Top Rank has not demonstrated that the default judgment recommended by the Magistrate

7    should be set aside. Although N.R.S. 31.320(2) may provide relief for a garnishee from "any final

8    judgment against the garnishee defendant for the same reasons and upon the same terms and

9    conditions as provided for by rule of court for relief from a judgment or order in civil cases," Top

10   Rank offers no basis to set aside the default judgment. (Top Rank Obj., pgs. 14-15).

11

12        N.R.S. 31.320 points to the applicable rule of court for relief as F.R.C.P. 55(c), which

13   provides that "[t]he court may set aside an entry of default for good cause, and it may set aside a

14   default judgment under Rule 60(b)." (Emphasis supplied). A district court has the discretion to set

15   aside a default judgment where grounds for relief from the default are presented, including "mistake,

16   inadvertence, surprise, or excusable neglect." F.R.C.P. 60(b)(1). "Three factors are central to the

17   analysis: (1) whether the defendant's culpable conduct led to the default; (2) whether the defendant

18   has a meritorious defense; and (3) whether the reopening of the default judgment would prejudice

19   the plaintiff." *United States v. Scharringhausen*, 224 Fed. Appx. 611, 612, 2007 WL 684126, at *1

20   (9th Cir. 2007) (citations omitted). *See also S.E.C. v. Small Cap Research Group, Inc.*, 226

21   Fed.Appx. 656, 658, 2007 WL 579809, at *1 (9th Cir. 2007) ("Beyond this, we cannot say that the

22   court abused its discretion in denying Ware's motion to set aside the default. It was based on Ware's

23   culpable conduct in refusing to answer the complaint for months after it was due as well as his

24   failure to engage local counsel. Whether or not also required to set aside a default judgment, it

25

26

27

28                                          19

appears that Ware offered no meritorious defense, and that the SEC together with the public it represents, would be prejudiced by lifting the judgment.").

Top Rank fails in all aspects of the applicable analysis.

**First**, Top Rank's willful and knowing failure to answer duly served Interrogatories is the sole reason for the default recommendation.  The decision to answer the Interrogatories – or to wilfully ignore them, as in fact happened – was entirely within Top Rank's control, and therefore, its own conduct led to the default.

**Second**, Top Rank's supposed "meritorious defense" consists solely of its position that "Plaintiffs' attempts to serve the writ have been disastrous, chaotic, and incomplete." (Top Rank Obj., pg. 15).  This false claim is refuted by evidence that Plaintiffs indeed made effective service on Top Rank on June 22, 2007 (Ex. D), and again on June 25, 2007 (Ex. E), which was later evidenced by letters between counsel (Exs. F and G).  Moreover, Top Rank did not rely upon the allegedly defective service in failing to respond to the Interrogatories.  Indeed, Arum claims that he cannot even recall being served.  Yet, Top Rank received multiple copies of this Court's Order of Attachment and the Writs and Interrogatories, and its own counsel confirmed notice of same in writing.  (Ex. G).  Nonetheless, Top Rank consciously chose to disregard this Court's directives at its peril.  Hence, Top Rank fails to offer any defense, let alone a meritorious one, as to why it failed to answer the Interrogatories.

**Third**, Plaintiffs will suffer significant prejudice should the Court decide to set aside the default.  The purpose of the Interrogatories served with a Writ of Garnishment is to obtain information which will allow a plaintiff to pursue the assets of a debtor.  Timing is plainly important, as reflected in the statutory requirement that responses be provided within 20 days from service.

1   N.R.S. 31.260(1)(e). Furthermore, Plaintiffs were deprived of the ability to dispute the interrogatory

2   responses as inadequate, which is a separate right provided for by the Statute. *See* N.R.S. 31.330.

3   Top Rank's failure to answer the Interrogatories within the allotted time has left Plaintiffs,

4   approximately 8 months later, with little avenue to pursue the assets which they sought to secure by

5   the Writ of Garnishment. Top Rank's glib offer to "voluntarily answer garnishment interrogatories

6   if properly served" – in other words, to do what it was required to do long ago under the law – would

7   afford Plaintiffs no comfort at this juncture. (Top Rank Obj., pg. 15). In short, Top Rank has not

8   demonstrated sufficient cause to set aside the entry of a default judgment.

21

**CONCLUSION**

**WHEREFORE**, for the foregoing reasons, Plaintiffs pray for an Order: (i) dismissing Top Rank's objections to the Magistrate's Report and Recommendation; together with (ii) such other and further relief as this Court deems just and proper.

Dated this 31st day of March, 2008.


JUDD BURSTEIN, P.C.


_____
Judd Burstein, Esq. (admitted *pro hac vice*)
Peter B. Schalk, Esq. (admitted *pro hac vice*)
1790 Broadway, Suite 1501
New York, New York 10019
(212) 974-2400

- and -

Eric Olsen (Nevada Bar No. 3127)
Gordon & Silver, Ltd.
3960 Howard Hughes Pkwy., 9th Floor
Las Vegas, Nevada 89169
(703) 796-5555

*Attorneys for Plaintiffs Michelle Corrales and Gary Shaw Productions, LLC*

22